UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

ANTHONY LAMONT MOORE,

          Plaintiff,          Case No. 2:16-cv-152

v.                                      Honorable Robert Holmes Bell

UNKNOWN JOHNSON, et al.,

          Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's Eighth Amendment claims against Defendants McGinn, Hubble, Gloud, Perry, Curley, and Unknown Parties #1 and #2 will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), as will Plaintiff's retaliation claims against Defendants Perry, Curley, and Unknown Parties #1 and #2. However, the Court will serve the complaint against Defendants

Johnson, Burke, Flatt, McGinn, Hubble, and Gloud with regard to Plaintiff's retaliation claims, and against Defendant Flatt with regard to Plaintiff's Eighth Amendment failure to protect claim.

## Discussion

I. Factual allegations

Plaintiff Anthony Lamont Moore, a prisoner currently confined at the Ojibway Correctional Facility (OCF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Corrections Officers Unknown Johnson, Unknown Flatt, and Unknown Burke, Warden Unknown Perry, Lieutenant Unknown McGinn, Deputy Warden Unknown Hubble, Sergeant Unknown Gloud, Inspector Unknown Curley, Resident Unit Manager Unknown Party #1 (who might be Swanson), and Transfer Coordinator Unknown Party #2.

In Plaintiff's complaint, he alleges that on January 13, 2015, while he was confined at the Newberry Correctional Facility (NCF), Plaintiff was standing with his Caucasian cell mate outside their cell waiting for another prisoner to finish vacuuming the cell because it had just been searched by Defendant Burke. Defendant Johnson approached Plaintiff and accused him of having his foot on the hallway wall and leaving a mark. Plaintiff states that the wall was already dirty. Plaintiff showed Defendant Johnson that his foot was not on the wall and Defendant Johnson stated, "I'll just write your black a** a fuc**g loitering ticket." Defendant Johnson wrote a loitering ticket on Plaintiff, but not on his white cell mate. Plaintiff filed a grievance on Defendant Johnson.

On January 26, 2015, Defendant Johson told Plaintiff that he knew Plaintiff had lied in the grievance and said that because of the lie, he was going to search Plaintiff. Plaintiff filed a grievance on Defendant Johnson asserting retaliation and harassment. On April 2, 2015, Plaintiff was placed on "00 status" and Defendants Burke and Johnson told Plaintiff that he had to ask

permission to shower or go to the bathroom. However, other 00 status prisoners were not required to ask permission. Plaintiff filed a grievance on Defendants Burke and Johnson. On April 15, 2015, Defendant Johnson came into Plaintiff's cube and "tore Plaintiff's area of control up." Defendant Johnson told Plaintiff that he was going to teach Plaintiff a lesson about what happens when prisoners write grievances. Plaintiff was prevented from speaking with the shift command about the situation by Defendant Johnson. Plaintiff filed a grievance.

On April 16, 2015, Defendant Johnson saw Plaintiff and stated:

> Moore you see how I lied on you by writing the tickets, and you see how we are only applying the double 00 status rules to you and nobody else, now keep on writing those grievances and watch what happens to you.

*See* ECF No. 1, PageID.10. Plaintiff filed a grievance. Plaintiff spoke to shift command and was subsequently moved from 11 unit to 10 unit.

Later that day, when Plaintiff was leaving chow, Defendant Johnson stopped him and asked to see his prison ID card. Defendant Johnson said "you see what writing grievances on me get you . . . it gets your dumb a** two false misconduct reports and kicked out of my unit." When Plaintiff complained that Defendant Johnson's conduct was retaliation, Defendant Johnson responded that Plaintiff could not prove that. Defendant Johnson told Plaintiff not to be surprised if a knife, razor, or drugs were found in Plaintiff's area of control. Defendant Johnson also told Plaintiff that the reason he had been moved to 10 unit was so that Plaintiff could be harassed by Defendant Johnson's friends. Plaintiff filed a grievance.

On April 16, 2015, when Plaintiff arrived on 10 unit, Defendant Flatt told him that he was not going to behave the way that he had in 11 unit. On May 12, 2015, Plaintiff was awakened by Defendant Johnson who told Plaintiff that he was working in Plaintiff's unit that day

and that he was "going to pay [Plaintiff] back for writing all them grievances" on Defendant Johnson. Later that day, Defendant Johnson wrote two grievances on Plaintiff, which were later thrown out. Plaintiff states that when he wrote a grievance on Defendant Johnson, staff returned the grievance without processing it. Plaintiff then sent the grievance to the Office of Legal Affairs, who also returned the grievance to Plaintiff, instructing him to file it at NCF. Plaintiff again attempted to submit the grievance at NCF, but it was again returned to him unprocessed.

On August 20, 2015, Plaintiff was playing pinochle with two other prisoners. One of the prisoners became angry and threatened with physical violence. Plaintiff left the table and went to the office where Defendant Flatt was on the computer. Plaintiff told Defendant Flatt that he was having problems with prisoner Ellington, but Defendant Flatt told Plaintiff that he was busy and to come back later. Plaintiff told Defendant Flatt that prisoner Ellington had threatened to "kick his butt," but Defendant Flatt merely reiterated that he was busy. Plaintiff returned to the unit and found prisoner Ellington sitting with the cards still in his hands. Plaintiff said that he was not going to play pinochle with prisoner Ellington anymore. Prisoner Ellington responded by threatening Plaintiff and putting his finger in Plaintiff's face. Plaintiff told prisoner Ellington to get his finger out of Plaintiff's face. Plaintiff pushed prisoner Ellington's hand away, knocking the cards out of his hand and causing the cards to hit prisoner Ellington in the face. Prisoner Ellington then hit Plaintiff, causing Plaintiff to hit his head. Prisoner Ellington then began kicking or stomping Plaintiff in the head. Plaintiff's yelling was eventually responded to by Defendant Flatt. Plaintiff was transported to the Helen Newberry Joy Hospital for treatment of head injuries, and was later transferred to Marquette General Hospital for further treatment. Plaintiff filed a grievance on Defendant Flatt for failing to protect him from prisoner Ellington.

On August 20, 2015, Defendant Curley asked Plaintiff about the incident with prisoner Ellington and Plaintiff relayed what he could remember about the incident. Defendant Curley told Plaintiff that he was being placed in temporary segregation pending a transfer. Plaintiff told Defendant Curley that he could not be transferred to Ojibway (OCF) because prisoner Ellington had many friends at OCF. Defendant Curley told Plaintiff to take it up with staff once he arrived at OCF.

Plaintiff discussed his concerns about being transferred with Defendant Hubble. Defendant Hubble told Plaintiff that he would no longer be a problem at NCF, and that he should discuss his concerns with staff at OCF. When Plaintiff asked how he was a problem, Defendant Hubble told him that he filed too many grievances. Defendants Gloud and McGinn also told Plaintiff that they wanted him transferred so that he would no longer be a problem for staff, and that they did not care where he was transferred. Defendant Unknown Party #2, who was the transfer coordinator at NCF, told Plaintiff that he should discuss any concerns with staff at OCF. Plaintiff then sent a letter to Defendant Perry. On August 27, 2015, Plaintiff spoke to Defendant Perry and Resident Unit Manager Unknown Party #1, who might be named Swanson. Defendants Perry and Resident Unit Manager Unknown Party #1 told Plaintiff that he would have to address his concerns with staff at OCF.

On August 31, 2015, Plaintiff was transferred to OCF. Plaintiff filed grievances on Defendants Perry, McGinn, Hubble, Gloud, Curley, Resident Unit Manager Unknown Party #1, and Unknown Party #2 which were denied at each step. Plaintiff claims that the grievance responses misconstrued the facts in an attempt to cover up what had really happened. On November 2, 2015,

Plaintiff was assaulted by a prisoner at OCF who "was cool" with prisoner Ellington. On May 3, 2016, prisoner Ellington received a sentence of three years imprisonment for his assault on Plaintiff.

Plaintiff states that Defendants violated his rights under the First, Eighth, and Fourteenth Amendments, as well as under state law. Plaintiff seeks compensatory and punitive damages, as well as declaratory relief.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility

standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff claims that Defendants Johnson and Burke violated his equal protection rights. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440. However, while a convicted prisoner does not forfeit all constitutional protections by virtue of his confinement, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights . . . ." *Price v. Johnston*, 334 U.S. 266, 285 (1948). "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives – including deterrence of crime, rehabilitation

of prisoners, and institutional security." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citing, *inter alia*, *Turner v. Safley*, 482 U.S. 78, 84 (1987)).

To establish a violation of the Equal Protection Clause, an inmate must show that the defendants purposefully discriminated against him. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Such discriminatory purpose must be a motivating factor in the actions of the defendants. *Id.* at 265-66. "A plaintiff presenting a race-based equal protection claim can either present direct evidence of discrimination, or can establish a prima facie case of discrimination under the burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 458 (6th Cir. 2011).

Plaintiff, who is black, claims that Defendants Johnson and Burke wrote a ticket on him for loitering, but did not write a ticket on a white prisoner, Mr. Dustin Stomp, who was present and engaged in the same conduct. Plaintiff further states that during the incident, Defendant Johnson told Plaintiff "I'll just write your black a** a fuc***g loitering ticket." The Court concludes that Plaintiff's equal protection claims against Defendants Johnson and Burke are nonfrivolous and are not properly dismissed on initial review.

Plaintiff claims that Defendants Johnson, Burke, Perry, McGinn, Hubble, Gloud, Curley, Unknown Party #1 (possibly named Swanson), and Unknown Party #2 (Transfer Coordinator) all retaliated against him for his use of the grievance system in violation of the First Amendment. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of

ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive).

As set forth above, Plaintiff specifically alleges that Defendants Johnson, Burke, Flatt, McGinn, Hubble, and Gloud all made statements indicating that they were subjecting Plaintiff to harassment, misconduct tickets, and deliberate indifference as a result of Plaintiff's use of the grievance procedure. Therefore, Plaintiff's retaliation claims against Defendants Johnson, Burke, Flatt, McGinn, Hubble, and Gloud are not frivolous and may not be dismissed on initial review. However, Plaintiff's allegations with regard to Defendants Perry, Curley, and Unknown Parties #1

and #2 merely show that they were involved in transferring Plaintiff to OCF, but fail to show that they acted with a retaliatory motive. Plaintiff merely alleges the ultimate fact of retaliation against these parties. Accordingly, Plaintiff's speculative allegations against Defendants Perry, Curley, and Unknown Parties #1 and #2 fail to state a claim for retaliation.

Plaintiff claims that Defendants Flatt, McGinn, Hubble, Gloud, Perry, Curley and Unknown Parties #1 and #2 violated his rights under the Eighth Amendment by failing to protect him. Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). To establish a violation of this right, Plaintiff must show that Defendants were deliberately indifferent to the Plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880-81 (6th Cir. 1988). While a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least establish that he reasonably fears such an attack. *Thompson v. County of Medina, Ohio*, 29 F.3d 238, 242-43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety.")

Plaintiff claims that Defendant Flatt failed to protect him from an assault by Defendant Ellington when he refused to respond to Plaintiff's complaint that prisoner Ellington had threatened him over a game of pinochle. Plaintiff alleges that prisoner Ellington was a much larger man than Plaintiff. As noted above, Plaintiff went to Defendant Flatt and told him that prisoner Ellington had threatened to "kick his butt," but Defendant Flatt told Plaintiff that he was busy and

to come back later. Plaintiff states that he returned to the unit and exchanged words with prisoner Ellington, which resulted in prisoner Ellington's attack on Plaintiff. The Court concludes that Plaintiff's failure to protect claim against Defendant Flatt is not clearly frivolous and is not properly dismissed on initial review.

Plaintiff also claims that Defendants McGinn, Hubble, Gloud, Perry, Curley and Unknown Parties #1 and #2 failed to protect him when they allowed him to be transferred to OCF despite his claims that prisoner Ellington had friends at OCF and that Plaintiff would be in danger if he was transferred to that facility. As noted above, Plaintiff claims that he was assaulted by a prisoner at OCF who "was cool" with prisoner Ellington. Plaintiff states that when he voiced his concerns to Defendants McGinn, Hubble, Gloud, Perry, Curley and Unknown Parties #1 and #2, these Defendants told him that he should address his concerns with officials at OCF. However, Plaintiff fails to allege facts indicating whether he addressed his safety concerns with officials at OCF as he was instructed to do by Defendants. Plaintiff fails to allege facts showing that Defendants were aware of any specific threat of danger to Plaintiff at OCF other than his conclusory assertion that prisoner Ellington had friends at OCF. The Court concludes that Plaintiff's failure to protect claims against Defendants McGinn, Hubble, Gloud, Perry, Curley and Unknown Parties #1 and #2 are conclusory and do not rise to the level of an Eighth Amendment violation.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's Eighth Amendment claims against Defendants McGinn, Hubble, Gloud, Perry, Curley, and Unknown Parties #1 and #2 will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), as will Plaintiff's retaliation

claims against Defendants Perry, Curley, and Unknown Parties #1 and #2.  The Court will serve the complaint against Defendants Johnson, Burke, Flatt, McGinn, Hubble, and Gloud with regard to Plaintiff's retaliation claims, and against Defendant Flatt with regard to Plaintiff's Eighth Amendment failure to protect claim.

      An Order consistent with this Opinion will be entered.


Dated: December 28, 2016                /s/ Robert Holmes Bell
                                          ROBERT HOLMES BELL
                                          UNITED STATES DISTRICT JUDGE