UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ANTHONY LAMONT MOORE #255379,

    Plaintiff,

v.                                        Case No. 2:16-cv-00152
                                             HON. ROBERT J. JONKER

UNKNOWN JOHNSON, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by state prisoner Anthony Lamont Moore pursuant to 42 U.S.C. § 1983. Plaintiff is currently confined at the Baraga Maximum Correctional Facility. The events about which Plaintiff complains occurred while he was confined at the Newberry Correctional Facility. Plaintiff alleges that Defendants Johnson, Flatt, Burke, McGinn, Hubble, and Gloud violated his rights. Defendants filed a motion for summary judgment (ECF No. 36). Plaintiff filed a response. (ECF No. 39).

On January 13, 2015, Plaintiff's cell was searched by corrections officer Defendant Burke and a new corrections officer that Burke was training. Defendant Johnson accused Plaintiff of having his foot on the dirty cell wall. Plaintiff believed that Defendant Johnson was accusing him of destroying state property. Defendant Johnson issued Plaintiff a misconduct ticket for loitering. Plaintiff states that the ticket was racially motivated because prisoner Stump, who is white and also present in the cell, did not receive a ticket.

Plaintiff asserts that on January 26, 2015, Defendant Johnson told him to report to his office at 3:00 pm because the sergeant wanted to speak to him about a grievance that Plaintiff had written complaining about Defendant Johnson. Defendant Johnson accused Plaintiff of lying. Plaintiff denied lying on the grievance. Defendant Johnson then stated that "since you lie shake down." Plaintiff filed a grievance later that day.

On April 2, 2015, Plaintiff got into the shower at 12:50 pm. At 1:03 pm, Defendant Johnson told Plaintiff to get his I.D. card and report to the office. When he arrived at the office, Defendants Burke and Johnson had the "Double OO, unemployment status rules out." Plaintiff asserts that he was required to ask permission to go to showers and the bathroom although other prisoners on "Double OO status" did not need to ask to for permission. Plaintiff asserts that Defendants Burke and Johnson took this action because Plaintiff had filed grievances against them.

On April 15, 2015, Defendant Johnson searched the cube and "tore-up" Plaintiff's area of control. Defendant Johnson told Plaintiff that he was teaching him a lesson for writing grievances on staff. Plaintiff filed a grievance on Defendant Johnson. On April 16, 2015, Defendant Johnson stated "Moore you see how I lied on you by writing the tickets, and you see how we are only applying the double OO status rule to you and nobody else, now keep on writing those grievances and watch what happens to you." Plaintiff submitted a grievance on this issue.

Plaintiff alleges that after he spoke with shift command, he was moved from 11 Unit to 10 Unit. When Plaintiff arrived at 10 Unit, Defendant Flatt told Plaintiff that he "was not going to be on that same bullsh\*\* that Plaintiff had submitted on his co-worker, Defendant Johnson from January 13, 2015 all the way up to April 16, 2015, for Defendant Johnson's acts." Plaintiff asserts that he later learned that he had been moved because Defendant Johnson wanted his friends

2

in 10 Unit to harass Plaintiff.  Defendant Johnson spoke to Plaintiff in the chow hall and requested Plaintiff's I.D. At that time, Defendant Johnson told Plaintiff that filing grievances got him two false misconduct tickets and moved out of Johnson's unit. Defendant Johnson stated "this little act between you and me is not over.  And don't be surprise if a knife, a razor, or drugs, be found in your area of control."  Plaintiff submitted a grievance.

On May 12, 2015, Defendant Johnson woke Plaintiff to inform him that he was working in Plaintiff's unit and intended to write Plaintiff misconduct tickets.  In fact, Defendant Johnson issued two misconduct tickets, which were subsequently dismissed.  Plaintiff sent a grievance to the Office of Legal Affairs, but was told to re-file a step I grievance at the prison.  The grievance coordinator refused to process the grievance.

Plaintiff alleges that on August 20, 2015, he was playing pinochle with prisoner Ellington. Plaintiff was winning and setting-up Ellington with the help of another prisoner to ensure the win.  Ellington threatened to harm Plaintiff and twice pointed his finger in Plaintiff's face.  Plaintiff left the game and went to the office where Defendant Flatt was working on a computer.  After Plaintiff told Defendant Flatt that he was having problems with prisoner "Fat Cat, AKA Mr. Ellington," Defendant Flatt told Plaintiff to come back later.  Plaintiff states that Defendant Flatt was not busy, but just "looking up stuff on the computer in Mr. French's office."  Plaintiff persisted to tell Defendant Flatt what had happened.  Defendant Flatt responded by stating "didn't I say I was busy."  When Plaintiff returned to his cell, Ellington was still holding cards in his hand.  Plaintiff stated that he would not play with Ellington anymore.  Plaintiff yelled at Ellington after Ellington put his "hands in Plaintiff's face."  Plaintiff states that Ellington was hitting him while pointing a finger in his face.  Plaintiff states that he was yelling loudly, but

3

Defendant Flatt never responded.  Ellington knocked some of the cards out of Plaintiff's hand causing the cards to hit Ellington.  Plaintiff sat down on his chair. Ellington hit Plaintiff, causing Plaintiff to hit his head.  Ellington then kicked and stomped on Plaintiff's head.  Plaintiff was yelling, but Defendant Flatt failed to immediately respond.  Plaintiff was transported to the hospital for severe head injuries.  On May 3, 2016, Ellington received a three year prison term for the assault of Plaintiff.

Plaintiff returned to the prison on August 26, 2015.  Plaintiff was placed in temporary segregation while awaiting a transfer to the Ojibway Correctional Facility.  Plaintiff stated that he could not go to the Ojibway Correctional Facility because Ellington had friends there.  Plaintiff was told to discuss his concerns with Ojibway staff.  Plaintiff states that Defendant Hubble refused to help and was just glad that Plaintiff was being transferred out of Newberry so that he would no longer be a problem.  Plaintiff asserts that Defendants Gloud and McGinn would not help him.  Plaintiff was told by the transfer coordinator, Defendant Perry, and Defendant John Doe to address his concerns with Ojibway staff.  Plaintiff asserts that he was being transferred in retaliation for his grievance submissions.  Plaintiff filed a grievance on the issue.  Plaintiff disagrees with the claim that he was in danger if he stayed at Newberry.  Plaintiff asserts that Defendants have tried to cover-up the truth.  Plaintiff alleges that after his transfer to Ojibway, a prisoner assaulted him on November 2, 2015.

In the Opinion and Order dated December 28, 2016, the Court stated that Plaintiff's remaining claims were for retaliation against Defendants Johnson, Burke, Flatt, McGinn, Hubble, and Gloud and for failure to protect against Defendant Flatt. (ECF Nos. 4 and 5).  In an order dated

4

January 26, 2017, the court clarified that Plaintiff's equal protection claims against Defendants Johnson and Burke remain in the case. (ECF No. 8). Defendants move for summary judgment.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

5

Defendant Johnson argues that Plaintiff's retaliation claim based on the loitering misconduct ticket must be dismissed because Plaintiff cannot establish the elements of adverse action or causation. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). Plaintiff asserts that he is not bringing a retaliation claim against Defendant Johnson based upon the issuance of the loitering misconduct ticket. (See ECF No. 19, PageID.192). Plaintiff states that the loitering misconduct supports his equal protection claim, because a white prisoner did not receive a loitering misconduct ticket at the time Plaintiff did. Plaintiff explains that his retaliation claims are based upon his receipt of two misconduct tickets; one for being out of place and the second for violating a posted rule. Both of those tickets were dismissed.

In addition, Defendant Johnson argues that the checkmate doctrine bars Plaintiff's retaliation claim, because he was found guilty of loitering at the hearing on the misconduct charge. However, the Sixth Circuit expressly rejected the "checkmate doctrine" in *Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018) concluding that "[a] finding of guilt at a prison misconduct hearing does not act as an absolute bar to a prisoner's First Amendment retaliation claim." *Id.* at 262.

6

Moreover, Defendant Johnson did not develop his argument that no adverse action resulted from the loss of privileges.  Defendant Johnson argues that Plaintiff only received a one-day loss of privileges.  Defendant Johnson asserts that a one-day loss of privileges fails to rise to the level of adverse conduct.  In *Maben*, the Sixth Circuit set forth several examples of what may constitute an adverse action.

> When deciding whether the issuance of a misconduct ticket rises to the level of an adverse action, we look to both the punishment Maben could have faced and the punishment he ultimately did face. *See Scott v. Churchill,* 377 F.3d 782 789 (6th Cir. 2004).  ("[T]he mere potential threat of disciplinary sanctions is sufficiently adverse action to support a claim of retaliation."); *Brown v. Crowley,* 312 F.3d 782, 789 (6th Cir. 2002) (looking to what the prisoner "could have been sentenced to . . . if he had been found guilty").  The sanctions that Maben faced for a Class II misconduct included" "[t]oplock (confinement to quarters), not to exceed five days . . . ."; loss of privileges for up to 30 days; assignment of extra duty; and restitution and/or disgorgement.  (citation omitted).  The actual punishment resulting from Maben's misconduct hearing was loss or privileges for seven days.  These privileges included the rights to access exercise facilities, to attend group meetings (including Bible class), to use the telephone, to have visitors, to access the general library, and to access the activity room.
>
> In *Hill v. Lapin*, this Court found that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse." 630 F.3d 468, 474 (6th Cir. 2010). In *Noble v. Schmitt*, this Court denied qualified immunity where the conduct at issue was that "Defendants restricted his privileges after he filed a considerable number of grievances against them." 87 F.3d 157, 162 (6th Cir. 1996). In *Harbin–Bey v. Rutter*, when concluding that the prisoner suffered no adverse action, the Court noted that the prisoner "did not lose any privileges as a result of the [Notice of Intent to Conduct an Administrative Hearing]." 420 F.3d 571, 579 (6th Cir. 2005).
>
> In other cases, we have found sufficiently adverse punishments that were "at least as severe as" the one imposed here, including confiscating legal papers and other property, *Bell*, 308 F.3d at 604, subjecting the prisoner to retaliatory cell searches, *id*., and damaging

7

> a prisoner's typewriter, *LaFountain v. Harry*, 716 F.3d 944, 948–49 (6th Cir. 2013); *see also Watson v. Rozum*, 834 F.3d 417, 423 (3d Cir. 2016) ("[E]ven though his Class I misconduct was reduced to a Class II misconduct at his hearing, Watson lost his radio as a result and the Class II misconduct became part of his prison record. This is substantially more than a *de minimis* consequence for someone confined in a prison cell."); *Barr v. Diguglielmo*, 348 Fed.Appx. 769, 774 (3d Cir. 2009) (finding an adverse action where a prisoner "was prohibited from participating in *any* prison activities (including religious activities ...)"); *Reynolds v. Green*, 25 Fed.Appx. 256, 261 (6th Cir. 2001) (finding an adverse action where a prisoner was transferred from a facility where he could "come and go with permission," to a facility where he could not); *Hall v. Sutton*, 755 F.2d 786, 787–88 (11th Cir. 1985) (holding that an inmate stated a First Amendment retaliation claim based upon the confiscation of his tennis shoes). *But see Ingram v. Jewell*, 94 Fed. Appx. 271, 273 (6th Cir. 2004) (finding that a loss of fourteen days of privileges did not constitute adverse action).

*Id*. at 266-267.    Defendant Johnson does not explain his claim that the causation element of retaliation was not established by Plaintiff.

Defendants asserts that Plaintiff's transfer from one prison to another cannot support a retaliation claim. Defendants have failed to develop this argument. Plaintiff has asserted that he was transferred to the Ojibway Correctional Facility, a disciplinary facility, in retaliation for his grievance filings despite the fact that each Defendant knew he was in danger of physical assault at the Ojibway prison. In fact, Plaintiff asserts that he was assaulted after he was transferred. The determination of whether a defendant's action is adverse is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether a defendant's conduct is "capable of deterring a person of ordinary firmness" from exercising his rights; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). "Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a

8

prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005); *see also Smith v. Yarrow*, 78 F. App'x. 529, 543 (6th Cir. 2003) ("transfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights") (internal quotation marks omitted). However, the transfer may rise to the level of an adverse action if it would result in "foreseeable, negative consequences to the particular prisoner." *Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010) (citing *Siggers-El*, 412 F.3d at 701-02; *Pasley v. Conerly*, 345 F. App'x. 981, 985 (6th Cir. 2009)). Plaintiff has alleged that his transfer to the Ojibway Correctional facility, which was motivated by a desire to retaliate against him for his grievance filings and litigation activity, was an adverse action because it placed him in danger of assault.

Defendants Burke, Hubble, Gloud, and McGinn argue that Plaintiff failed to allege any facts showing that they had personal involvement in the asserted claims. In order to demonstrate liability under 42 U.S.C. § 1983, a prisoner must establish that a prison official acted under color of state law and that the official's actions offended rights secured by the Constitution or laws of the United States. *Baker v. McCollan*, 443 U.S. 137 (1989); *West v. Atkins*, 487 U.S. 42, 48 (1998). A claim under § 1983 requires a clear showing that the official was personally involved in the conduct that forms the basis of the complaint. *Rizzo v. Goode*, 423 U.S. 362 (1976); *Bellamy v. Bradley*, 729 F.2d 416 (6th Cir. 1984). Additionally, liability under § 1983 must be based on active unconstitutional behavior and cannot be based on a "mere failure to act." *Salephour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998). A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized,

9

approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Plaintiff alleges that Defendants Hubble, Gloud, and McGinn were personally involved in his transfer to a disciplinary prison because he had filed grievances, and that each of these Defendants were aware that Plaintiff's placement at the Ojibway Correctional Facility would place him in danger of physical assault, but ignored that danger. Defendants Hubble, Gloud, and McGinn failed to address Plaintiff's claims and failed to support their motion with affidavits, exhibits, or other evidence.

Plaintiff alleges that Defendant Burke treated him differently than white prisoners who were similarly situated on "Double OO Status" and retaliated against Plaintiff. Plaintiff asserts that Defendant Burke required him to comply with the rules and restrictions while he was on "Double OO Status" without making white prisoners on "Double OO Status" follow the same rules or restrictions. Plaintiff asserts that he had to request permission to leave his cell, take a shower, use the bathroom, eat, and to do other things, but white prisoners who were similarly situated had no restrictions. Defendant Burke has failed to address these allegations.

Defendant Flatt asserts that Plaintiff failed to demonstrate that he knowingly disregarded an unreasonable risk to Plaintiff's safety when he told Plaintiff that he was too busy to address Plaintiff's immediate safety concerns. Plaintiff has alleged that after he was threatened by Ellington, he spoke with Defendant Flatt about the incident. Defendant Flatt stated that he was busy. At the time, however, Defendant Flatt was looking up farming equipment on ARUS

10

French's computer. When Plaintiff stated that Ellington pointed his finger in Plaintiff's face and told him that he "will kick my butt," Defendant Flatt turned to Plaintiff and stated "didn't I say I was busy." Plaintiff had no choice but to return to his cell. Plaintiff was then involved in an altercation with prisoner Ellington. During the fight, Plaintiff and other prisoners were screaming. Defendant Flatt was approximately ten feet away, but he did not immediately intervene because he was still looking at farming equipment on the internet.

Under the Eighth Amendment, a prison official has a duty to protect an inmate from violence caused by other prisoners. *Wilson v. Sieter*, 501 U.S. 294, 303 (1991); *Nelson v. Overberg*, 999 F.2d 162, 165 (6th Cir. 1993); *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *Roland v. Johnson*, 856 F.2d 764 (6th Cir. 1988); *McGhee v. Foltz*, 852 F.2d 876, 880-81 (6th Cir. 1988). "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (citations omitted). Recognizing that a prison official has an obligation to protect an inmate from assault by another inmate, the Supreme Court defined deliberate indifference as requiring a showing that the prison official consciously disregarded a substantial risk of serious harm to plaintiff. *Id.* at 839. The court stated:

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as infliction of punishment.

11

*Id.* at 837.  Thus, in order to support a claim that a prison official failed to protect plaintiff, two conditions must be satisfied: (1) the inmate must show that a substantial risk of harm was present and (2) that the defendants, having knowledge of that risk, possessed a culpable state of mind. *Id.*

In order to support an Eighth Amendment claim, plaintiff must establish "something more than a lack of ordinary due care, inadvertence, or error; the conduct must instead be 'obdurate' or 'wanton'--exhibiting recklessness or callous neglect." *Id.* at 165.  *See also Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992); *Walker v. Norris*, 917 F.2d 1449 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 881 (6th Cir. 1988).  An error of judgment does not subject a prison official to liability.  *Jeffers v. Heavrin*, 10 F.3d 380, 381 (6th Cir. 1993) (errors of judgment are shielded by qualified immunity); *Marsh v. Arn*, 937 F.2d at 1069.

In *Stewart v. Love*, 696 F.2d 43 (6th Cir. 1982), the Sixth Circuit affirmed the dismissal of a prisoner's complaint that prison officials failed to protect him.  In that case, prison officials transferred the plaintiff for a period of six months to another prison cell after he informed the officials that he feared for his safety.  The plaintiff was then transferred back to his original cell.  The plaintiff informed his counselor that he feared for his safety, because he heard rumors regarding a planned attack.  The plaintiff was subsequently assaulted.  The court found that defendants were not deliberately indifferent to a known risk of harm to the plaintiff, and upheld the district court's finding that the assault was a single, isolated incident.  The district court judge indicated that a full hearing would be appropriate if no action had been taken to protect the plaintiff. The plaintiff, however, was transferred to another unit after his initial complaints.  Following the plaintiff's transfer back to the original unit, he then made only general allegations that someone

12

was going to hit him on the head. The court concluded that the defendants, at most, were guilty of mere negligence and dismissed the claim.

Defendant Flatt states that Plaintiff simply asserts in his complaint that he told Plaintiff to come back, not that he would not help Plaintiff. Further, Defendant Flatt states that Plaintiff put himself in danger by returning to his cell. Defendant Flatt states that it was Plaintiff's choice to return to his cell and instigate a fight with Ellington. Plaintiff asserts that he had no choice but to return to his cell because he would have received a misconduct ticket if he went anywhere else. Further, Plaintiff states that he never instigated the fight with Ellington and Ellington was convicted of assaulting Plaintiff. Plaintiff was not given a misconduct ticket for fighting, because he was the victim. In the opinion of the undersigned, a question of fact exists whether Defendant Flatt violated Plaintiff's Eighth Amendment rights.

Defendants alternatively move for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the

13

court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*. However, the immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). In the opinion of the undersigned, unresolved questions of fact exist that preclude qualified immunity.

Accordingly, it is recommended that Defendants' Motion for Summary Judgment (ECF No. 36) be denied.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

 /s/ Timothy P. Greeley  
TIMOTHY P. GREELEY  
UNITED STATES MAGISTRATE JUDGE

Dated: June 4, 2018